O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HORTENCIA LARA,                        )    NO. EDCV 12-00693-MAN
                                       )
                Plaintiff,             )
                                       )    MEMORANDUM OPINION
        v.                             )
                                       )    AND ORDER
CAROLYN W. COLVIN,[1]                   )
Acting Commissioner of Social          )
Security,                              )
                                       )
                Defendant.             )
_____)

     Plaintiff filed a Complaint on May 7, 2012, seeking review of the
denial of plaintiff's application for a period of disability, disability
insurance benefits ("DIB"), and supplemental security income benefits
("SSI").  On June 15, 2012, the parties consented, pursuant to 28 U.S.C.
§ 636(c), to proceed before the undersigned United States Magistrate
Judge.  The parties filed a Joint Stipulation on January 30, 2013, in
which:  plaintiff seeks an order reversing the Commissioner's decision

_____

     [1]    Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

1  and remanding this case for the payment of benefits or, alternatively,

2  for further administrative proceedings; and the Commissioner requests

3  that her decision be affirmed or, alternatively, remanded for further

4  administrative proceedings.

5

6  **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

7

8      On September 9, 2008, plaintiff filed an application for SSI, and

9  on October 10, 2008, she filed an application for a period of disability

10  and DIB.  (Administrative Record ("A.R.") 28.)  Plaintiff, who was born

11  on January 8, 1967 (A.R. 35),[2] claims to have been disabled since August

12  2, 2008 (A.R. 28) due to:  neuropathy; arthritis; weakness; numbness in

13  her legs and arms; high blood pressure; depression; and an "inability to

14  walk" (A.R. 63, 73).

15

16      After the Commissioner denied plaintiff's claim initially and upon

17  reconsideration (A.R. 28, 63-68, 73-77), plaintiff requested a hearing

18  (A.R. 78).  On June 22, 2010, plaintiff, who was represented by an

19  attorney, appeared and testified at a hearing before Administrative Law

20  Judge Mason D. Harrell, Jr. (the "ALJ").  (A.R. 28, 41-58.)  Vocational

21  expert Corinne J. Porter also testified.  (*Id.*)  On August 13, 2010, the

22  ALJ denied plaintiff's claim (A.R. 28-37), and the Appeals Council

23  subsequently denied plaintiff's request for review of the ALJ's decision

24  (A.R. 1-4).  That decision is now at issue in this action.

25

26

27      [2]  On the alleged disability onset date, plaintiff was 41 years
old, which is defined as a younger individual.  (A.R. 35; citing 20

28  C.F.R. §§ 404.1563, 416.963.)

2

1                      **SUMMARY OF ADMINISTRATIVE DECISION**

2

3        The ALJ found that plaintiff met the insured status requirements of

4   the Social Security Act through September 30, 2010, and has not engaged

5   in substantial gainful activity since August 2, 2008, the alleged onset

6   date of her disability.  (A.R. 30.)  The ALJ determined that plaintiff

7   has the severe impairment of "sensory neuropathy," but she does not have

8   an impairment or combination of impairments that meets or medically

9   equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

10  Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d),

11  416.925, 416.926).  (*Id.*)

12

13       After reviewing the record, the ALJ determined that plaintiff has

14  the residual functional capacity ("RFC") to perform a limited range of

15  sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).

16  (A.R. 30-31.)  Specifically, the ALJ found that:

17

18       [Plaintiff] can lift and carry 10 pounds occasionally and 5-6

19       pounds frequently.  She can stand and walk for 30 minutes at

20       a time with the use of a cane for a total of 2 hours out of an

21       8-hour workday.  She can sit for 30 minutes after which she

22       has to stand and stretch for one minute for a total of 6 hours

23       out of an 8-hour workday.  She cannot balance or perform fast

24       movements of the body when twisting or turning.  She cannot

25       constantly use her hands, but she can reach with her hands.

26       She can occasionally perform activities requiring agility,

27       such a[s] walking on uneven terrain, climbing ladders, and

28       working at heights.  She would miss work up to twice a month.

                                      3

1    She is limited to simple, repetitive tasks due to pain
2    medications.

3

4 (A.R. 31.)

5

6    The ALJ found that plaintiff was unable to perform her past
7 relevant work as a machine presser. (A.R. 35.) However, based upon his
8 RFC assessment for plaintiff, and after having considered plaintiff's
9 age, education,[3] and work experience, as well as the testimony of the
10 vocational expert, the ALJ found "there are jobs that exist in
11 significant numbers in the national economy that [plaintiff] can
12 perform," including that of "small items assembler" and "production
13 inspector of items." (A.R. 35-36.) Accordingly, the ALJ concluded that
14 plaintiff has not been under a disability, as defined in the Social
15 Security Act, from August 2, 2008, through August 13, 2010, the date of
16 the ALJ's decision. (A.R. 36-37.)

17

18                          **STANDARD OF REVIEW**

19

20    Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
21 decision to determine whether it is free from legal error and supported
22 by substantial evidence in the record as a whole. Orn v. Astrue, 495
23 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant
24 evidence as a reasonable mind might accept as adequate to support a
25 conclusion.'" Id. (citation omitted). The "evidence must be more than
26 a mere scintilla but not necessarily a preponderance." Connett v.

27 ────────────────────

28    [3]    The ALJ found that plaintiff has a limited education and is
able to communicate in English. (A.R. 19.)

4

1  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the

2  record can constitute substantial evidence, only those 'reasonably drawn

3  from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063,

4  1066 (9th Cir. 2006)(citation omitted).

5

6       Although this Court cannot substitute its discretion for that of

7  the Commissioner, the Court nonetheless must review the record as a

8  whole, "weighing both the evidence that supports and the evidence that

9  detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of

10  Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also

11  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

12  responsible for determining credibility, resolving conflicts in medical

13  testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d

14  1035, 1039 (9th Cir. 1995).

15

16       The Court will uphold the Commissioner's decision when the evidence

17  is susceptible to more than one rational interpretation.  Burch v.

18  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may

19  review only the reasons stated by the ALJ in his decision "and may not

20  affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d

21  at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse

22  the Commissioner's decision if it is based on harmless error, which

23  exists only when it is "clear from the record that an ALJ's error was

24  'inconsequential to the ultimate nondisability determination.'"  Robbins

25  v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v.

26  Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d

27  at 679.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISCUSSION**

Plaintiff claims the ALJ failed to consider properly: (1) her subjective symptom testimony; and (2) the lay witness's statements. (Joint Stipulation ("Joint Stip.") at 4-15, 20-24.)

**I.   The ALJ Failed To Give Clear And Convincing Reasons For Rejecting Plaintiff's Testimony Regarding Her Symptoms and Limitations.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." <u>Robbins</u>, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir.

6

2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

     At the June 22, 2010 administrative hearing, plaintiff testified that she became disabled in August 2008, when her hands and legs became numb. (A.R. 44.) Plaintiff testified, *inter alia*, that she: does not have any sensation in her hands and "[f]rom the knees down[ward]"; has vision problems; has pain in her elbows, wrists, knees, and ankles; loses her balance "very often" and, thus, uses a cane or a walker to ambulate longer distances; can stand for 30 minutes at a time, after which time she gets numb from the waist down and her "feet get weak and they give in"; can sit for 20 minutes at a time before experiencing back pain; and can lift a maximum of 2-3 pounds. (A.R. 44, 49, 51-52.) Plaintiff also testified that she cannot perform fine manipulations or engage in repetitive work with her hands. (A.R. 49-51, 53-54.) Plaintiff testified that she can perform some chores without assistance, but she performs them in sections with breaks. (A.R. 54.) Plaintiff also can drive for approximately one mile before her legs begin to cramp. (*Id.*) When asked if she could perform a "sit-down job" where she could stand and stretch every 30 minutes and lift no more than five pounds at a time, plaintiff testified that she "maybe . . . could do it" if she were trained, but she fears her pain would be too much for her to keep her job. (A.R. 52.)

     As noted *supra*, the ALJ found that plaintiff has the severe impairment of sensory neuropathy. (A.R. 30.) The ALJ also found that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 32.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's

1  reason for discrediting plaintiff's subjective complaints must be clear
2  and convincing.

4  In his decision, the ALJ found that "[plaintiff]'s statements
5  concerning the intensity, persistence and limiting effects of [her]
6  symptoms are not credible to the extent they are inconsistent with [the
7  ALJ's RFC assessment for plaintiff]."  (A.R. 32.)  The ALJ found
8  plaintiff's testimony regarding her subjective symptoms to be not
9  credible, because:  (1) the medical evidence does not support
10 plaintiff's allegations of totally disabling limitations; (2) plaintiff
11 gave "inconsistent" responses regarding her double vision; (3) plaintiff
12 demonstrated give-away weakness during motor testing; (4) plaintiff's
13 treating physician, Idermohan Luthra, M.D., questioned whether plaintiff
14 has true left upper extremity dysmetria; and (5) plaintiff was "more
15 concerned about her inability to obtain disability [benefits] rather
16 than [her medical] examination."  (A.R. 33.)

18 With respect to the ALJ's first ground, even assuming *arguendo* that
19 the medical evidence did not corroborate the degree of plaintiff's
20 allegations of disabling limitations, this factor cannot form the sole
21 basis for discounting plaintiff's subjective symptom testimony.  <u>Burch</u>,
22 400 F.3d at 681; *see* <u>Bunnell</u>, 947 F.2d at 347 (noting that "[i]f an
23 adjudicator could reject a claim of disability simple because
24 [plaintiff] fails to produce evidence supporting the severity of the
25 pain, there would be no reason for an adjudicator to consider anything
26 other than medical findings").  Accordingly, because the ALJ's first
27 ground cannot, by itself, constitute a clear and convincing reason for
28 discrediting plaintiff's testimony, the ALJ's credibility determination

8

rises or falls with the ALJ's other grounds for discrediting plaintiff.

The ALJ's second ground for finding plaintiff to be not credible is not clear and convincing.  In his decision, the ALJ found plaintiff to be not credible, because despite normal ocular examinations, she gave "inconsistent responses" to Dr. Luthra regarding her double vision. (A.R. 33.)   In his September 18, 2008 treatment note, Dr. Luthra reported that plaintiff complains of "double vision some time." (A.R. 294.)  Dr. Lutra also reported that plaintiff "states she sees double, but it was inconsistent response." (A.R. 295.)  Contrary to the ALJ's finding, however, it appears that Dr. Luthra attributed plaintiff's intermittent or "inconsistent" double vision to a possible defect in plaintiff's neuromuscular junction, rather than to a lack of candor or credibility on plaintiff's part.  (*See* A.R. 296 –- finding that plaintiff "has diplopia [(double vision)], which is inconsistent which raises a suspicion whether it is a neuromuscular junction defect.")  As such, the ALJ's reasoning does not constitute a clear and convincing reason for finding plaintiff to be not credible.

The ALJ's third ground for finding plaintiff to be not credible –- *i.e.*, because she "demonstrated give-away weakness during motor testing . . . , which indicates exaggeration of her condition" (A.R. 33) –- is unavailing.  While "give-away" weakness can be a result of poor effort, it can also be a result of pain.  *See* Benner v. Astrue, 2012 U.S. Dist. LEXIS 30022, at *35 n.25 (M.D. Pa. Mar. 6, 2012)(noting that "give-away weakness can be a sign of either lack of effort or pain").  Because Dr. Luthra's treatment notes do not provide any insight into the cause of plaintiff's give-away weakness –- *i.e.*, pain or exaggeration –- the

9

1   ALJ's presumption that plaintiff's give-away weakness results from an
2   "exaggeration of her condition" is not supported by substantial evidence
3   and, thus, does not constitute a clear and convincing reasoning for
4   finding plaintiff to be not credible.

5

6       The ALJ's fourth reason for finding plaintiff to be not credible --
7   *i.e.*, because Dr. Luthra "questioned whether [plaintiff] has true left
8   upper extremity dysmetria" (A.R. 33) -- is also unavailing.   In his
9   treatment notes, Dr. Luthra noted that plaintiff's coordination was
10  normal and reported the following:   "May be questionable left upper
11  extremity dysmetria."   (A.R. 292.)   However, Dr. Luthra's statement,
12  with nothing more, does not implicate plaintiff's credibility.   As such,
13  it cannot constitute a clear and convincing reason for finding plaintiff
14  to be not credible.

15

16      The ALJ also found plaintiff to be not credible because she was
17  benefit-seeking, noting that one of Dr. Luthra's treatment notes
18  indicated that plaintiff was concerned about her inability to obtain
19  disability benefits.   (A.R. 33, 274.)   "Generally speaking, however,
20  every claimant who applies for benefits seeks pecuniary gain, and this
21  fact does not indicate a lack of credibility."   Bell v. Colvin, 2013
22  U.S. Dist. LEXIS 43877, at *14 (C.D. Cal. March 20, 2013)(citing Ratto
23  v. Sec'y, Dept. of Health & Hum. Servs., 839 F. Supp. 1415, 1428-29 (D.
24  Or. 1993)(noting that "[i]f the desire or expectation of obtaining
25  benefits were by itself sufficient to discredit a claimant's testimony,
26  then no claimant . . . would be found credible"); *see also* Yang v.
27  Comm'r of SSA, 488 Fed. Appx. 203, 205 (9th Cir. 2012)(same).   Thus, the
28  ALJ's assertion on this point does not constitute a clear and convincing

1   reason for finding plaintiff to be not credible.

2

3        Accordingly, for the aforementioned reasons, the ALJ failed to give

4   clear and convincing reasons, as required, for finding plaintiff to be

5   not credible.  This constitutes error.[4]

6

7    **II.   The ALJ Failed To Consider Properly The Lay Witness's**

8         **Description  Of  Plaintiff's  Limitations  And  Daily**

9         **Activities.**

10

11       In evaluating the credibility of a claimant's assertions of

12  functional limitations, the ALJ must consider lay witnesses' reported

13  observations of the claimant.  Stout, 454 F.3d at 1053.  "[F]riends and

14  family members in a position to observe a claimant's symptoms and daily

15  activities are competent to testify as to [the claimant's] condition."

16  Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §§

17  404.1513(d), 416.913(d) ("[W]e may also use evidence from other sources

18  to show the severity of your impairment(s). . . .  Other sources

19  include, but are not limited to . . . spouses, parents and other

20  caregivers, siblings, other relatives, friends, neighbors, and

21

22       [4]     To the extent the Commissioner attempts to absolve the ALJ of
    any error by stating that he included "all the limitations [plaintiff]
23  described at the hearing [in his RFC assessment]," this attempt is
    unavailing. (A.R. 33.)  Not all plaintiff's alleged limitations were
24  included in the ALJ's RFC assessment.  For example, at the
    administrative hearing, plaintiff testified that she may be able to
25  perform a job that required her to lift no more than 5 pounds at a time.
    In his RFC assessment for plaintiff, however, the ALJ found plaintiff
26  capable of lifting and carrying 10 pounds occasionally and 5-6 pounds
    frequently. (A.R. 31.)  Clearly, the ALJ's RFC assessment for plaintiff
27  exceeds her alleged limitation of being able to lift no more than 5
    pounds a time.  Further, the ALJ's RFC assessment does not appear to
28  include any accommodation for plaintiff's alleged double vision problem.

                                     11

clergy."). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)(citation omitted). Additionally, "the reasons 'germane to each witness' must be specific." Stout, 454 F.3d at 1054.

In his decision, the ALJ found that "[m]ost of the limitations and activities of daily living . . . described [by plaintiff's daughter, Jazmin Lara, we]re actually consistent with [his RFC assessment]." (A.R. 34.) Nevertheless, the ALJ gave little weight to some of Jazmin Lara's descriptions of plaintiff's limitations and activities of daily living, because they were "inconsistent." (Id.) For example, the ALJ found Jazmin's statement that her mother can "shop[] for groceries on a weekly basis" to be inconsistent with Jazmin's statement that her mother "cannot shop for clothes." (Id.) The ALJ noted that "[t]he only reason which comes to mind that [plaintiff] cannot shop for clothing is that it might be difficult for her to try on clothing; however, this should not be a major obstacle if [plaintiff] knows her size." (Id.) The Court does not find these two statements to be inconsistent. As the ALJ noted, trying on clothes likely would be difficult for plaintiff, particularly in view of her sensory neuropathy and stability problems. Further, contrary to the ALJ's suggestion, even if plaintiff "knows her size," it is likely that she would still try on the clothing before purchasing it. Thus, the ALJ's rationale is unconvincing.

The ALJ also gave little weight to Jazmin Lara's observations, because her description of plaintiff's limitations ostensibly were not supported by the evidence of record. Specifically, the ALJ took issue

12

with Jazmin Lara's claims that plaintiff:  (1) was precluded from attending events with large crowds; (2) could not walk for more than half of a block without needing to rest; and (3) had weakness in her hands.  (A.R. 34.) The Ninth Circuit has held, however, that an ALJ may not discredit lay witness testimony, because it is "not supported by the medical evidence in the record." Bruce, 557 F.3d at 1116.  Moreover, there is medical evidence that supports Jazmin Lara's statements regarding her mother's limitations, including, *inter alia*, plaintiff's sensory neuropathy diagnosis and findings that she has "slow and cautious" gait and "tends to lose her balance." (A.R. 292.)  Thus, the ALJ erred in rejecting Jazmin Lara's statements regarding plaintiff's limitations on this basis.

Lastly, the ALJ gave little weight to Jazmin Lara's lay observations, because "she is the daughter of [plaintiff] and has the usual familial devotion."  (A.R. 34.)  An ALJ may discredit the statements of a lay witness if the ALJ finds the witness to be biased. *See, e.g.,* Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(finding the ALJ's consideration of the claimant's prior girlfriend's "close relationship" with the claimant and desire to help him as a germane reason for disregarding her testimony).  However, "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of particular value . . . ; such lay witnesses will often be family members." Smolen, 80 F.3d at 1289; *see also* Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009)(finding that being an interested party in the abstract was insufficient to reject a spouse's testimony).  Here, the ALJ discredited Jazmin Lara simply

13

because she was plaintiff's daughter.  As such, the ALJ's reasoning does not constitute a specific and germane reason for discrediting Jazmin Lara's observations.

Accordingly, for the aforementioned reasons, the ALJ failed to set forth specific and germane reasons, as required, for affording Jazmin Lara's description of plaintiff's limitations little weight.  This constitutes reversible error.

### III. **Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  *See, e.g.,* Dodrill, 12 F.3d at 918 (ordering remand so that the ALJ could articulate specific and appropriate findings, if any existed, for

14

1  rejecting the claimant's subjective pain testimony).  On remand, the ALJ

2  must correct the above-mentioned deficiencies and errors.  After doing

3  so, the ALJ may need to reassess plaintiff's RFC, in which case

4  additional testimony from a vocational expert likely will be needed to

5  determine what work, if any, plaintiff can perform.

6

7                              **CONCLUSION**

8

9       Accordingly, for the reasons stated above, IT IS ORDERED that the

10  decision of the Commissioner is REVERSED, and this case is REMANDED for

11  further proceedings consistent with this Memorandum Opinion and Order.

12

13      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

14  copies of this Memorandum Opinion and Order and the Judgment on counsel

15  for plaintiff and for defendant.

16

17      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

18

19  DATED:   September 4, 2013

20                                    _Margaret A. Nagle_

21                                    _____
                                      MARGARET A. NAGLE

22                                    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

                                      15