O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**HORTENCIA LARA,**               ) NO. EDCV 12-00693-MAN
                                  )
         **Plaintiff,**           )
                                  ) MEMORANDUM OPINION
         v.                       )
                                  ) AND ORDER
**CAROLYN W. COLVIN,**[1]         )
**Acting Commissioner of Social** )
**Security,**                     )
                                  )
         **Defendant.**           )
_____)

Plaintiff filed a Complaint on May 7, 2012, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"). On June 15, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on January 30, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On September 9, 2008, plaintiff filed an application for SSI, and on October 10, 2008, she filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 28.) Plaintiff, who was born on January 8, 1967 (A.R. 35),[2] claims to have been disabled since August 2, 2008 (A.R. 28) due to: neuropathy; arthritis; weakness; numbness in her legs and arms; high blood pressure; depression; and an "inability to walk" (A.R. 63, 73).

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 28, 63-68, 73-77), plaintiff requested a hearing (A.R. 78). On June 22, 2010, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Mason D. Harrell, Jr. (the "ALJ"). (A.R. 28, 41-58.) Vocational expert Corinne J. Porter also testified. (*Id.*) On August 13, 2010, the ALJ denied plaintiff's claim (A.R. 28-37), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4). That decision is now at issue in this action.

---

[2] On the alleged disability onset date, plaintiff was 41 years old, which is defined as a younger individual. (A.R. 35; citing 20 C.F.R. §§ 404.1563, 416.963.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2010, and has not engaged in substantial gainful activity since August 2, 2008, the alleged onset date of her disability. (A.R. 30.) The ALJ determined that plaintiff has the severe impairment of "sensory neuropathy," but she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (A.R. 30-31.) Specifically, the ALJ found that:

> [Plaintiff] can lift and carry 10 pounds occasionally and 5-6 pounds frequently. She can stand and walk for 30 minutes at a time with the use of a cane for a total of 2 hours out of an 8-hour workday. She can sit for 30 minutes after which she has to stand and stretch for one minute for a total of 6 hours out of an 8-hour workday. She cannot balance or perform fast movements of the body when twisting or turning. She cannot constantly use her hands, but she can reach with her hands. She can occasionally perform activities requiring agility, such a[s] walking on uneven terrain, climbing ladders, and working at heights. She would miss work up to twice a month.

> She is limited to simple, repetitive tasks due to pain medications.

(A.R. 31.)

The ALJ found that plaintiff was unable to perform her past relevant work as a machine presser. (A.R. 35.) However, based upon his RFC assessment for plaintiff, and after having considered plaintiff's age, education,[3] and work experience, as well as the testimony of the vocational expert, the ALJ found "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including that of "small items assembler" and "production inspector of items." (A.R. 35-36.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from August 2, 2008, through August 13, 2010, the date of the ALJ's decision. (A.R. 36-37.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v.

---

[3] The ALJ found that plaintiff has a limited education and is able to communicate in English. (A.R. 19.)

1  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the
2  record can constitute substantial evidence, only those 'reasonably drawn
3  from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063,
4  1066 (9th Cir. 2006)(citation omitted).

6     Although this Court cannot substitute its discretion for that of
7  the Commissioner, the Court nonetheless must review the record as a
8  whole, "weighing both the evidence that supports and the evidence that
9  detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of
10 Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*
11 Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
12 responsible for determining credibility, resolving conflicts in medical
13 testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d
14 1035, 1039 (9th Cir. 1995).

16    The Court will uphold the Commissioner's decision when the evidence
17 is susceptible to more than one rational interpretation.  Burch v.
18 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may
19 review only the reasons stated by the ALJ in his decision "and may not
20 affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d
21 at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse
22 the Commissioner's decision if it is based on harmless error, which
23 exists only when it is "clear from the record that an ALJ's error was
24 'inconsequential to the ultimate nondisability determination.'"  Robbins
25 v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v.
26 Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d
27 at 679.

**DISCUSSION**

Plaintiff claims the ALJ failed to consider properly: (1) her subjective symptom testimony; and (2) the lay witness's statements. (Joint Stipulation ("Joint Stip.") at 4-15, 20-24.)

### I. The ALJ Failed To Give Clear And Convincing Reasons For Rejecting Plaintiff's Testimony Regarding Her Symptoms and Limitations.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

At the June 22, 2010 administrative hearing, plaintiff testified that she became disabled in August 2008, when her hands and legs became numb. (A.R. 44.) Plaintiff testified, *inter alia*, that she: does not have any sensation in her hands and "[f]rom the knees down[ward]"; has vision problems; has pain in her elbows, wrists, knees, and ankles; loses her balance "very often" and, thus, uses a cane or a walker to ambulate longer distances; can stand for 30 minutes at a time, after which time she gets numb from the waist down and her "feet get weak and they give in"; can sit for 20 minutes at a time before experiencing back pain; and can lift a maximum of 2-3 pounds. (A.R. 44, 49, 51-52.) Plaintiff also testified that she cannot perform fine manipulations or engage in repetitive work with her hands. (A.R. 49-51, 53-54.) Plaintiff testified that she can perform some chores without assistance, but she performs them in sections with breaks. (A.R. 54.) Plaintiff also can drive for approximately one mile before her legs begin to cramp. (*Id.*) When asked if she could perform a "sit-down job" where she could stand and stretch every 30 minutes and lift no more than five pounds at a time, plaintiff testified that she "maybe . . . could do it" if she were trained, but she fears her pain would be too much for her to keep her job. (A.R. 52.)

As noted *supra*, the ALJ found that plaintiff has the severe impairment of sensory neuropathy. (A.R. 30.) The ALJ also found that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 32.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's

reason for discrediting plaintiff's subjective complaints must be clear and convincing.

In his decision, the ALJ found that "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC assessment for plaintiff]." (A.R. 32.) The ALJ found plaintiff's testimony regarding her subjective symptoms to be not credible, because: (1) the medical evidence does not support plaintiff's allegations of totally disabling limitations; (2) plaintiff gave "inconsistent" responses regarding her double vision; (3) plaintiff demonstrated give-away weakness during motor testing; (4) plaintiff's treating physician, Idermohan Luthra, M.D., questioned whether plaintiff has true left upper extremity dysmetria; and (5) plaintiff was "more concerned about her inability to obtain disability [benefits] rather than [her medical] examination." (A.R. 33.)

With respect to the ALJ's first ground, even assuming *arguendo* that the medical evidence did not corroborate the degree of plaintiff's allegations of disabling limitations, this factor cannot form the sole basis for discounting plaintiff's subjective symptom testimony. Burch, 400 F.3d at 681; *see* Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simple because [plaintiff] fails to produce evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, because the ALJ's first ground cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's credibility determination

8

rises or falls with the ALJ's other grounds for discrediting plaintiff.

The ALJ's second ground for finding plaintiff to be not credible is not clear and convincing. In his decision, the ALJ found plaintiff to be not credible, because despite normal ocular examinations, she gave "inconsistent responses" to Dr. Luthra regarding her double vision. (A.R. 33.) In his September 18, 2008 treatment note, Dr. Luthra reported that plaintiff complains of "double vision some time." (A.R. 294.) Dr. Lutra also reported that plaintiff "states she sees double, but it was inconsistent response." (A.R. 295.) Contrary to the ALJ's finding, however, it appears that Dr. Luthra attributed plaintiff's intermittent or "inconsistent" double vision to a possible defect in plaintiff's neuromuscular junction, rather than to a lack of candor or credibility on plaintiff's part. (*See* A.R. 296 -- finding that plaintiff "has diplopia [(double vision)], which is inconsistent which raises a suspicion whether it is a neuromuscular junction defect.") As such, the ALJ's reasoning does not constitute a clear and convincing reason for finding plaintiff to be not credible.

The ALJ's third ground for finding plaintiff to be not credible -- *i.e.*, because she "demonstrated give-away weakness during motor testing . . . , which indicates exaggeration of her condition" (A.R. 33) -- is unavailing. While "give-away" weakness can be a result of poor effort, it can also be a result of pain. *See* Benner v. Astrue, 2012 U.S. Dist. LEXIS 30022, at *35 n.25 (M.D. Pa. Mar. 6, 2012)(noting that "give-away weakness can be a sign of either lack of effort or pain"). Because Dr. Luthra's treatment notes do not provide any insight into the cause of plaintiff's give-away weakness -- *i.e.*, pain or exaggeration -- the

9

ALJ's presumption that plaintiff's give-away weakness results from an "exaggeration of her condition" is not supported by substantial evidence and, thus, does not constitute a clear and convincing reasoning for finding plaintiff to be not credible.

The ALJ's fourth reason for finding plaintiff to be not credible –- *i.e.*, because Dr. Luthra "questioned whether [plaintiff] has true left upper extremity dysmetria" (A.R. 33) -- is also unavailing.  In his treatment notes, Dr. Luthra noted that plaintiff's coordination was normal and reported the following:  "May be questionable left upper extremity dysmetria."  (A.R. 292.)  However, Dr. Luthra's statement, with nothing more, does not implicate plaintiff's credibility.  As such, it cannot constitute a clear and convincing reason for finding plaintiff to be not credible.

The ALJ also found plaintiff to be not credible because she was benefit-seeking, noting that one of Dr. Luthra's treatment notes indicated that plaintiff was concerned about her inability to obtain disability benefits.  (A.R. 33, 274.)  "Generally speaking, however, every claimant who applies for benefits seeks pecuniary gain, and this fact does not indicate a lack of credibility."  Bell v. Colvin, 2013 U.S. Dist. LEXIS 43877, at *14 (C.D. Cal. March 20, 2013)(citing Ratto v. Sec'y, Dept. of Health & Hum. Servs., 839 F. Supp. 1415, 1428-29 (D. Or. 1993)(noting that "[i]f the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant . . . would be found credible")); *see also* Yang v. Comm'r of SSA, 488 Fed. Appx. 203, 205 (9th Cir. 2012)(same).  Thus, the ALJ's assertion on this point does not constitute a clear and convincing

reason for finding plaintiff to be not credible.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons, as required, for finding plaintiff to be not credible. This constitutes error.[4]

**II. The ALJ Failed To Consider Properly The Lay Witness's Description Of Plaintiff's Limitations And Daily Activities.**

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant. Stout, 454 F.3d at 1053. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d), 416.913(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s). . . . Other sources include, but are not limited to . . . spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and

---

[4] To the extent the Commissioner attempts to absolve the ALJ of any error by stating that he included "all the limitations [plaintiff] described at the hearing [in his RFC assessment]," this attempt is unavailing. (A.R. 33.) Not all plaintiff's alleged limitations were included in the ALJ's RFC assessment. For example, at the administrative hearing, plaintiff testified that she may be able to perform a job that required her to lift no more than 5 pounds at a time. In his RFC assessment for plaintiff, however, the ALJ found plaintiff capable of lifting and carrying 10 pounds occasionally and 5-6 pounds frequently. (A.R. 31.) Clearly, the ALJ's RFC assessment for plaintiff exceeds her alleged limitation of being able to lift no more than 5 pounds a time. Further, the ALJ's RFC assessment does not appear to include any accommodation for plaintiff's alleged double vision problem.

clergy."). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009)(citation omitted). Additionally, "the reasons 'germane to each witness' must be specific." <u>Stout</u>, 454 F.3d at 1054.

In his decision, the ALJ found that "[m]ost of the limitations and activities of daily living . . . described [by plaintiff's daughter, Jazmin Lara, we]re actually consistent with [his RFC assessment]." (A.R. 34.) Nevertheless, the ALJ gave little weight to some of Jazmin Lara's descriptions of plaintiff's limitations and activities of daily living, because they were "inconsistent." (*Id.*) For example, the ALJ found Jazmin's statement that her mother can "shop[] for groceries on a weekly basis" to be inconsistent with Jazmin's statement that her mother "cannot shop for clothes." (*Id.*) The ALJ noted that "[t]he only reason which comes to mind that [plaintiff] cannot shop for clothing is that it might be difficult for her to try on clothing; however, this should not be a major obstacle if [plaintiff] knows her size." (*Id.*) The Court does not find these two statements to be inconsistent. As the ALJ noted, trying on clothes likely would be difficult for plaintiff, particularly in view of her sensory neuropathy and stability problems. Further, contrary to the ALJ's suggestion, even if plaintiff "knows her size," it is likely that she would still try on the clothing before purchasing it. Thus, the ALJ's rationale is unconvincing.

The ALJ also gave little weight to Jazmin Lara's observations, because her description of plaintiff's limitations ostensibly were not supported by the evidence of record. Specifically, the ALJ took issue

with Jazmin Lara's claims that plaintiff: (1) was precluded from attending events with large crowds; (2) could not walk for more than half of a block without needing to rest; and (3) had weakness in her hands. (A.R. 34.) The Ninth Circuit has held, however, that an ALJ may not discredit lay witness testimony, because it is "not supported by the medical evidence in the record." Bruce, 557 F.3d at 1116. Moreover, there is medical evidence that supports Jazmin Lara's statements regarding her mother's limitations, including, *inter alia*, plaintiff's sensory neuropathy diagnosis and findings that she has "slow and cautious" gait and "tends to lose her balance." (A.R. 292.) Thus, the ALJ erred in rejecting Jazmin Lara's statements regarding plaintiff's limitations on this basis.

Lastly, the ALJ gave little weight to Jazmin Lara's lay observations, because "she is the daughter of [plaintiff] and has the usual familial devotion." (A.R. 34.) An ALJ may discredit the statements of a lay witness if the ALJ finds the witness to be biased. *See, e.g.,* Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(finding the ALJ's consideration of the claimant's prior girlfriend's "close relationship" with the claimant and desire to help him as a germane reason for disregarding her testimony). However, "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value . . . ; such lay witnesses will often be family members." Smolen, 80 F.3d at 1289; *see also* Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009)(finding that being an interested party in the abstract was insufficient to reject a spouse's testimony). Here, the ALJ discredited Jazmin Lara simply

because she was plaintiff's daughter. As such, the ALJ's reasoning does not constitute a specific and germane reason for discrediting Jazmin Lara's observations.

Accordingly, for the aforementioned reasons, the ALJ failed to set forth specific and germane reasons, as required, for affording Jazmin Lara's description of plaintiff's limitations little weight. This constitutes reversible error.

### III. **Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Dodrill, 12 F.3d at 918 (ordering remand so that the ALJ could articulate specific and appropriate findings, if any existed, for

14

rejecting the claimant's subjective pain testimony). On remand, the ALJ must correct the above-mentioned deficiencies and errors. After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 4, 2013

_/s/ Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE